HACKEL v MACOMB COUNTY COMMISSION

Docket No. 310402. Submitted October 5, 2012, at Detroit. Decided
October 30, 2012, at 9:15 a.m.

Mark Hackel, the Macomb County Executive, filed a declaratory
judgment action in the Macomb Circuit Court, against the Ma-
comb County Commission, seeking a determination that the
county executive, and not the commission, had authority to
approve Macomb County contracts. Both parties filed motions for
summary disposition. The court, John C. Foster, J., granted
summary disposition in favor of plaintiff, as well as his request for
attorney fees, finding that the county executive had authority to
approve Macomb County contracts and that the commission did
not have authority to reject or exercise control over contracts the
county executive had entered into on behalf of Macomb County.
Defendant appealed.

The Court of Appeals *held*:

1. Under MCL 45.514(1), for counties that have a population of
fewer than 1.5 million, the county charter sets forth the respective
authority, duties and responsibilities of the county executive and the
county board of commissioners. The Legislature delegated the func-
tion of allocating power in a charter county to the charter commission
first, subject to approval by the affected voters. County charter
provisions are subject to the same rules of interpretation as are
statutes and when charter language is unambiguous it controls.
Every word should be given meaning in order to avoid a construction
that would render any part of the statute surplusage or nugatory. The
court erred by granting summary disposition in favor of the county
executive. Section 4.4(d) of the Macomb County Charter states that
the commission may approve county contracts. The normal meaning
of "approve" in relation to government action implies the power to
disapprove. The charter granted the commission authority to approve
or reject county contracts. Section 4.4(d) did not limit the commis-
sion's approval authority to those contracts for which its approval
was otherwise required by the charter, state law or the contract itself;
rather, the commission could approve county contracts without
limitation. Even if § 4.4(d) of the charter did not grant the commis-
sion contract-approval authority, the authority was granted to the

commission under charter §§ 4.4(j) and 4.5. Unless specifically mandated by other charter provisions or by state law, the commission's contract-approval authority was permissive and not required.

2. Contrary to the county executive's argument, use of the phrase "may approve contracts" in § 4.4(d) implied that the Commission could choose not to exercise its approval authority with respect to some contracts and thereby leave approval of those contracts to the county executive. The commission exercised its discretion to confine its contract-approval authority by passing Macomb County Resolution 12-1, which required that the county executive submit only certain types of contracts for its review and approval. Contracts that do not fall within those parameters or that do fall within those parameters but on which the commission fails to act within 21 days, are left to the county executive to approve. Section 3.5(c) of the charter granted the county executive authority to exercise powers granted to him by ordinance but the provisions asserted by the county executive did not grant him contract-approval authority. The county executive has a significant role in the entire contracting process that has allowed him to discharge his enumerated charter duties.

3. The charter does not imply that the county executive possessed a power to approve contracts independent of any delegation of such power by the Commission. To hold otherwise would render § 4.4(d), which grants full discretionary contract-approval authority to the commission, surplusage or nugatory. Further, under the doctrine of *expressio unius est exclusio alterius*, the charter's expression of the commission's authority to approve contracts necessarily operated to exclude a comparable power of the county executive.

4. The separation of powers doctrine, Const 1963, art 3, § 2 applies only to the state level of government, and does not apply to local governmental units. Because the Legislature delegated the function of allocating power in a charter county to the charter commission, MCL 45.514(1), it is the terms of the Macomb County charter itself, rather than caselaw from other states, that governs whether the respective branches of Macomb County's government possess authority to approve contracts. Even if the separation of powers doctrine did apply there was no violation because the doctrine does not preclude the executive and legislative branches from acting in conjunction with one another if it is expressly stated in the Constitution or the charter. While the charter granted the commission contract-approval authority, the county executive retained a broad range of other contract-related powers, which

reflects that both branches shared powers regarding the overall contracting process in a manner consistent with the separation of powers doctrine.

5. Charter counties are subject to restrictions that are imposed by general law. Under MCL 141.434(1), of the Uniform Budgeting and Accounting Act (UBAA), MCL 141.421 *et seq*, unless otherwise provided by law, charter, resolution, or ordinance, the chief administrative officer, such as an elected county executive, has final responsibility for budget preparation, presentation of the budget to the legislative body, and the control of expenditures under the budget and the general appropriations act. MCL 141.434(1) did not require the county executive to approve county contracts because the Macomb County Charter provided "otherwise" by expressly granting that authority to the commission. While the county executive controlled expenditures in many ways, including by negotiating contracts, presenting proposed contracts to the commission and implementing contracts that have been approved, only the commission had contract-approval authority.

6. The trial court erred by holding that Macomb County Ordinance 2012-1, Resolution 12-1, and Resolution 11-23 improperly restricted the county executive's authority to expend appropriated funds by requiring him to seek approval of certain contracts. The trial court's reasoning, that the documents would allow the commission to retain control over funds after they had been appropriated, contrary to MCL 141.422a(3), was erroneous. The commission's contract-approval authority was not superseded by the county executive's authority to control expenditures under the UBAA. In addition, MCL 141.434(1), which granted the county executive authority to control expenditures under the budget and the general appropriations act, does not require that the county executive approve county contracts; rather, the Macomb County Charter provided "otherwise" by expressly granting that authority to the commission.

7. A statute may be declared void for vagueness if (1) it is overbroad and infringes on First Amendment freedoms, (2) it does not provides fair notice of the conduct it regulates, or (3) it gives the trier of fact unstructured and unlimited discretion in concluding whether the statute has been violated. The entire text of a statute is examined and the words of the statute are given their ordinary meaning. The Macomb County ordinance and resolutions were not void for vagueness. The county executive failed to establish or argue that they were penal, deprived any person of property interests, or threatened to infringe on individuals' First Amendment freedoms. In addition, the ordinance and resolutions

provided fair notice of the conduct regulated by adequately describing the types of contracts for which the commission's approval was required.

8. A court may award costs and attorney fees only if specifically authorized by statute, a court rule, or a recognized exception to the American rule, which mandates that a litigant be responsible for his or her own attorney fees. The trial court abused its discretion by granting the county executive's request for attorney fees and by ordering the commission to appropriate additional sums to cover those fees. The inherent-power caselaw on which the court relied did not apply to the facts of this case because the dispute was not about a lack of funding that imperiled the constitutional responsibilities of a branch of government. The county executive failed to establish that he lacked independent financial means to undertake the litigation and did not dispute the commission's assertion that it had appropriated money for him to use for legal matters. The county executive also failed to establish that it was necessary to initiate this litigation to carry out any statutory of constitutional responsibility. In addition, the county executive could propose an appropriations amendment if the appropriated amount was not sufficient.

Reversed and remanded for entry of summary disposition in favor of the commission.

COUNTIES — CHARTER COUNTIES — COUNTY CHARTERS — COUNTY EXECUTIVES AUTHORITY.

For counties that have a population of fewer than 1.5 million, the county charter sets forth the respective authority, duties and responsibilities of the county executive and the county board of commissioners; the Legislature delegated the function of allocating power in a charter county to the charter commission first, subject to approval by the affected voters; county charter provisions are subject to the same rules of interpretation as are statutes and when charter language is unambiguous it controls. [MCL 45.514(1).]

*O'Reilly Rancilio, P.C.* (by *Lawrence M. Scott* and *Donald P. DeNault, Jr.*), for Mark Hackel.

*Clark Hill PLC* (by *James E. Brenner* and *Gregory N. Longworth*), for the Macomb County Commission.

Before: K. F. KELLY, P.J., and MARKEY and SERVITTO, JJ.

MARKEY, J. Defendant, Macomb County Commission (the Commission), appeals by right the trial court's order granting summary disposition to plaintiff, Mark Hackel (the Executive), denying summary disposition to the Commission and granting the Executive's request for attorney fees. The Executive brought this action for declaratory and injunctive relief arising from a dispute regarding whether the Executive or the Commission has the authority to approve Macomb County contracts. We reverse and remand for entry of summary disposition for the Commission.

The Commission argues that the trial court erred by granting summary disposition to the Executive and in denying summary disposition to the Commission. We agree. This Court reviews de novo a trial court's decision on a motion for summary disposition. *Wayne Co v Wayne Co Retirement Comm*, 267 Mich App 230, 243; 704 NW2d 117 (2005). The Commission moved for summary disposition under MCR 2.116(C)(7), (8), and (10), and the Executive moved for summary disposition under MCR 2.116(C)(9) and (10). The trial court, however, did not indicate under which subrule it decided the motions. Because it is not necessary to consider evidence outside the pleadings to resolve this issue, we conclude that review is appropriate under MCR 2.116(C)(8) and (9). See MCR 2.116(G)(5); *Hughes v Region VII Area Agency on Aging*, 277 Mich App 268, 273; 744 NW2d 10 (2007).

A motion under MCR 2.116(C)(8) "tests the legal sufficiency of the complaint on the basis of the pleadings alone to determine if the opposing party has stated a claim for which relief can be granted." *Begin v Mich*

*Bell Tel Co*, 284 Mich App 581, 591; 773 NW2d 271 (2009). A reviewing court must accept all well-pleaded allegations as true and construe them in the light most favorable to the nonmoving party. *Id.* The motion should be granted only if no factual development could possibly justify a recovery. *Id.*

"A motion brought under MCR 2.116(C)(9) seeks a determination whether the opposing party has failed to state a valid defense to the claim asserted against it." *In re Smith Estate*, 226 Mich App 285, 288; 574 NW2d 388 (1997). A motion under MCR 2.116(C)(9) "is analogous to one brought pursuant to MCR 2.116(C)(8) in that both motions are tested by the pleadings alone, with the court accepting all well-pleaded allegations as true." *Id.* When a party's defenses are so untenable as a matter of law that no factual development could possibly deny the plaintiff's right to recovery, the motion is properly granted. *Id.*

This Court reviews de novo questions of law that arise in a declaratory judgment action. *Detroit City Council v Detroit Mayor*, 283 Mich App 442, 449; 770 NW2d 117 (2009). Thus, the interpretation of a statute or a municipal charter is a question of law we review de novo. *Wayne Co*, 267 Mich App at 243. Also, we review de novo whether a statute is void for vagueness, *STC, Inc v Dep't of Treasury*, 257 Mich App 528, 538-539; 669 NW2d 594 (2003), and whether the doctrine of the separation of powers applies, *Harbor Tel 2103, LLC v Oakland Co Bd of Comm'rs*, 253 Mich App 40, 50; 654 NW2d 633 (2002).

"Any county may frame, adopt, amend or repeal a county charter in a manner and with powers and limitations to be provided by general law. . . . The law may permit the organization of county government in form different from that set forth in this constitu-

tion . . . ." Const 1963, art 7, § 2. Pursuant to this authority, the Legislature enacted the charter counties act, MCL 45.501 *et seq. Lucas v Wayne Co Election Comm*, 146 Mich App 742, 749; 381 NW2d 806 (1985). MCL 45.514(1) provides, in relevant part:

> A county charter adopted under this act shall provide for all of the following:
>
> (a) In a county having a population of less than 1,500,000, for a salaried county executive, who shall be elected at large on a partisan basis, and for the county executive's authority, duties, and responsibilities. In a county having a population of 1,500,000, or more, a county charter adopted under this act shall provide for a form of executive government described and adopted under [MCL 45.511a].
>
> (b) The election of a legislative body to be known as the county board of commissioners, . . . and for their authority, duties, [and] responsibilities . . . .

MCL 45.511a(8) prescribes the powers and duties to be granted to the county executive in a county having a population of 1.5 million or more. But in counties that have a population of fewer than 1.5 million, MCL 45.514(1) unambiguously says that *the county charter* shall provide for the county executive's authority, duties, and responsibilities and for the county board of commissioners' authority, duties, and responsibilities. MCL 45.514(1) thus represents the Legislature's decision "to delegate the function of allocating power in a charter county to the charter commission in the first instance, subject to final approval by the affected voters." *Oakland Co Comm'r v Oakland Co Executive*, 98 Mich App 639, 650; 296 NW2d 621 (1980).[1]

---

[1] Although the Legislature has delegated this allocation of duties to charter counties having a population of fewer than 1.5 million, we also recognize that "a charter does not give a county carte blanche to adopt

Therefore, because Macomb County has a population of less than 1.5 million, this Court must look to the provisions of the Macomb County Charter to determine the manner in which that county's voters chose to allocate the respective powers of the Executive and the Commission. *Id.* at 649-650. County charter provisions are subject to the same rules of interpretation as are statutes. *Wayne Co*, 267 Mich App at 244. When the language of a charter provision is unambiguous, it controls. *Id.* at 243. The framers of the charter and the people who voted to adopt it, "must be presumed to have intended that the provision be construed as it reads." *Woods v Bd of Trustees of the Policemen & Firemen Retirement Sys of Detroit*, 108 Mich App 38, 43; 310 NW2d 39 (1981). When construing a statute, every word should be given meaning in order to avoid a construction that would render any part of the statute surplusage or nugatory. *Lapeer Co Abstract & Title Co v Lapeer Co Register of Deeds*, 264 Mich App 167, 172; 691 NW2d 11 (2004).

The Macomb County Charter unambiguously grants to the Commission the discretionary authority to approve contracts. Macomb County Charter, § 4.4 states, in relevant part: "In addition to other powers and duties prescribed in this Charter, the Commission may: . . . (d) Approve contracts of the County[.]" "The normal meaning of 'approve' with relation to government action implies the power to disapprove." *Alco Universal Inc v City of Flint*, 386 Mich 359, 362; 192 NW2d 247 (1971). That is because the term "approve" generally contemplates an exercise of discretion. *Id.*

whatever provisions it wishes; the county is still subject to the restrictions imposed by general law." *O'Hara v Wayne Co Clerk*, 238 Mich App 611, 613; 607 NW2d 380 (1999). Here, however, the Executive has identified no provisions of general law that preclude the allocation of powers set forth in the Macomb County Charter.

Moreover, the word "may" is used to express opportunity or permission. *Random House Webster's College Dictionary* (2001).[2] Thus, the plain and ordinary meaning of § 4.4(d) is that it affords to the Commission an opportunity and permission to approve or reject county contracts.

Contrary to the Executive's argument, there is no language in § 4.4(d) limiting the Commission's approval authority to what the Executive calls "legislative contracts," i.e., contracts for which the Commission's approval is otherwise required by the charter, by state law, or by the contract itself. Section 4.4(d) plainly says that the Commission "may . . . [a]pprove contracts of the County." There is no language qualifying the phrase "contracts of the County." For example, § 4.4(d) does not modify the phrase "contracts of the County" with additional language such as, "for which the Commission's approval is otherwise required by law, charter, or contract." This Court "long ago recognized that the judiciary cannot read restrictions or limitations into a statute that plainly contains none." *Rusnak v Walker*, 273 Mich App 299, 305; 729 NW2d 542 (2006). Patently, § 4.4(d) does not set forth the Executive's proposed limitations on the Commission's contract-approval authority. Therefore, the framers of the charter and the voters who adopted it presumably intended for § 4.4(d) to mean exactly what it says, i.e., that the Commission may approve contracts of the county, without limitation. *Woods*, 108 Mich App at 43.[3]

---

[2] This Court may rely on a dictionary definition to give an otherwise undefined word its plain and ordinary meaning. *Johnson v Pastoriza*, 491 Mich 417, 436; 818 NW2d 279 (2012).

[3] Because § 4.4(d) unambiguously grants to the Commission the authority to approve contracts, we conclude that it is not necessary or appropriate to consider the comments made by various persons during the charter commission proceedings. Where the language of a charter

Further, even if § 4.4(d) did not expressly grant contract-approval authority to the Commission, the Commission could exercise that power pursuant to §§ 4.4(j) and 4.5. Section 4.4(j) says that the Commission may "[e]xercise any power granted by law to charter or general law counties unless otherwise provided by this Charter." Similarly, § 4.5 states:

> The enumeration of powers in this Charter shall not be held or deemed to be exclusive. In addition to the powers enumerated in this Charter, implied by this Charter, or appropriate to the exercise of the powers enumerated in this Charter, the Commission shall have and may exercise all legislative powers which this Charter could specifically enumerate as provided by the Constitution and the laws of the State of Michigan.

Michigan law recognizes that counties possess authority to make contracts. MCL 45.3 states:

> Each organized county shall be a body politic and corporate, for the following purposes, that is to say: To sue and be sued, to purchase and hold real and personal estate for the use of the county; to borrow money for the purpose of erecting and repairing county buildings, and for the building of bridges, *to make all necessary contracts*, and to do all other necessary acts in relation to the property and concerns of the county. [Emphasis added.]

Plainly, MCL 45.3 grants Michigan counties the general power to enter into contracts. *Lapeer Co Abstract*, 264 Mich App at 176.

Therefore, because (1) § 4.4(j) grants to the Commission "any power granted by law to charter or general law counties unless otherwise provided by this Char-

---

provision is unambiguous, it is controlling. *Woods*, 108 Mich App at 43; see also *In re certified Question from the United States Court of Appeals for the Sixth Circuit*, 468 Mich 109, 115 n 5; 659 NW2d 597 (2003) ("[R]esort to legislative history of any form is proper *only* where a genuine ambiguity exists in [a] statute.").

ter," (2) the power to contract is granted by law to counties, and (3) the charter does not provide "otherwise," § 4.4(j) of the charter grants to the Commission the authority to contract. Likewise, § 4.5 of the charter, which grants to the Commission "all legislative powers which this Charter could specifically enumerate as provided by the Constitution and the laws of the State of Michigan," also confers the power to contract granted by MCL 45.3 to counties. Additionally, county boards of commissioners have traditionally approved county contracts. See generally *Lapeer Co Abstract*, 264 Mich App at 175 n 6 (noting that the county's commissioners in that case had approved a contract proposed by the register of deeds); 10 McQuillin, Municipal Corporations (3d ed, 2009 rev vol), § 29:19, p 402 (stating that the governing power of a county generally lies in the board of county commissioners). We also note that at the state level our Supreme Court has recognized that the Legislature has the authority to approve contracts absent a constitutional limitation. *Taxpayers of Mich Against Casinos v Michigan*, 471 Mich 306, 328; 685 NW2d 221 (2004). We therefore conclude that the authority to approve contracts falls within the Commission's residual legislative powers under § 4.5. Accordingly, even if § 4.4(d) did not expressly grant contract-approval authority to the Commission, § 4.4(j) and § 4.5 of the charter would convey such authority to the Commission.

Of course, the fact that the Commission has *permission* to approve or reject contracts does not mean that it *must* exercise that authority. Nothing in § 4.4(d) suggests that the Commission is *required* to review and approve all county contracts. Indeed, such a construction would contravene use of the permissive word "may." Therefore, according to its plain meaning, § 4.4(d) does not nullify other charter provisions *requir-*

*ing* the Commission to approve certain types of contracts, i.e., intergovernmental contracts and collective bargaining agreements. See Macomb County Charter, §§ 3.10(a) and 7.3.2. Whereas the Commission *must* approve the types of contracts identified in those provisions, the grant of *permission* to the Commission in § 4.4(d) to approve or disapprove contracts is discretionary, thereby allowing the Commission, if it so chooses, to approve contracts for which its approval is not mandated by other charter provisions or by state law.

And in fact, the Commission has exercised this discretion to confine its exercise of contract-approval authority. The Commission's new contract policy requires the Executive to submit only certain types of contracts for its review and approval, including contracts for the acquisition, leasing, or sale of real property or buildings, contracts providing for the payment of $35,000 or more in any fiscal year, and contracts involving construction projects in an amount of $100,000 or more. Macomb County Resolution 12-1, § II.B.3. Contracts that do not fall within the enumeration of the contract policy, or that fall within the policy but on which the Commission fails to act within 21 days, are left to the Executive to approve. Resolution 12-1, §§ II.B.1(c) and II.D.3. Further, the Executive may approve contracts required to operate his office if they fall within the appropriated amounts. Resolution 12-1, § II.C.1. The Executive may also approve contracts that must remain confidential for effective law enforcement and contracts necessitated by public emergencies. Resolution 12-1, §§ II.C.4 and II.C.5.

The Executive argues, however, that if he lacks independent authority under the charter to approve contracts, then the Commission has no authority to delegate contract-approval powers to him. Contrary to

the Executive's argument, the charter contemplates the delegation of powers to the Executive. By stating that the Commission "may" approve contracts, § 4.4(d) implicitly recognizes that the Commission may choose *not* to exercise its approval authority with respect to some contracts, thereby necessarily leaving the approval of those contracts to the Executive. Moreover, § 3.5(c) of the charter expressly refers to the delegation of powers to the Executive and provides for the Executive to exercise powers granted to him by ordinance:

> The Executive has the authority, duty, and responsibility to:

> * * *

> (c) Discharge the duties granted the Executive by this Charter, law, *or ordinance*, and exercise all incidental powers necessary or convenient for the discharge of the duties and functions specified in this Charter *or lawfully delegated to the Executive*. [Emphasis added.]

Therefore, the Executive's argument that the Commission lacks authority to delegate contract-approval powers to the Executive is unavailing.

Next, the Executive contends that various charter provisions imply that he possesses a power to approve contracts *independent of* any delegation of such a power by the Commission. But recognizing an implicit power to approve contracts on the part of the Executive would essentially nullify the Commission's express authority under § 4.4(d). Courts must avoid a construction that would render any part of a statute surplusage or nugatory. *Wayne Co*, 267 Mich App at 244; *Lapeer Co Abstract*, 264 Mich App at 172. As our Supreme Court has noted, the power to approve government action implies the power to *disapprove* such action. *Alco Universal Inc*, 386 Mich at 362. If the Executive could

simply approve a contract without submitting it to the Commission for approval, then the Commission's authority to approve *or disapprove* the contract would be rendered meaningless. Cf. *Detroit City Council*, 283 Mich App at 451 (holding that if this Court were to recognize a mayoral veto power over the city council's authority to disapprove an action, then the statute granting to the city council the sole authority to disapprove the action would be nullified).

In addition, the Executive's argument fails under "the doctrine of *expressio unius est exclusio alterius*, or inclusion by specific mention excludes what is not mentioned." *Id.* at 448. This doctrine is "a rule of construction that is a product of logic and common sense. The doctrine characterizes the general practice that when people say one thing they do not mean something else." *Id.* at 456 (citations and quotation marks omitted). In *Detroit City Council*, a statute granted to the legislative body of certain cities the authority to disapprove the transfer of a convention center to a regional authority but was silent regarding granting comparable authority to the mayor of such a city. *Id.* at 446, 456. The city council passed a resolution disapproving the transfer; the mayor vetoed the resolution, and the city council did not override the veto. *Id.* at 446. This Court held that "under the doctrine of *expressio unius est exclusio alterius*, the Legislature's expression of the city council's disapproval power operates to exclude a mayoral veto power of that disapproval." *Id.* at 456. This Court declined to read into the statute a mayoral veto power that was not expressly stated. *Id.* at 461. Likewise, here, § 4.4(d) expressly grants to the Commission the authority to approve contracts. No such authority is granted to the Executive. As discussed, the Commission's power to approve a contract includes the power to disapprove a contract. *Alco Uni-*

*versal Inc*, 386 Mich at 362. The Commission thus could not exercise its power to *disapprove* a contract if the Executive possessed an implied power to approve the same contract. Accordingly, the charter's expression of the Commission's authority to approve contracts necessarily operates to exclude a comparable Executive power. *Detroit City Council*, 283 Mich App at 456.

At any rate, the charter provisions on which the Executive relies do not imply a power to approve contracts. Section 8.6.1 requires the Executive to "prepare and administer a comprehensive balanced budget in a manner which assures coordination among Agencies." Section 8.10 requires the Commission to adopt "comprehensive policies and procedures governing the awarding of contracts, including the procurement and handling of services, supplies, materials, and equipment[,]" and then requires the Executive to "implement the policies adopted by the Commission, including requirements for competitive bidding and the use of sealed bids for purchases and contracts specified by ordinance." Section 3.5(a) grants the Executive the authority to "[s]upervise, coordinate, direct, and control all County departments . . ., facilities, operations, and services except as otherwise provided by this Charter." Section 3.5(c) gives the Executive the authority to "[d]ischarge the duties granted the Executive by this Charter, law, or ordinance, and exercise all incidental powers necessary or convenient for the discharge of the duties and functions specified in this Charter or lawfully delegated to the Executive."

Not one of these provisions entails the Executive's approval of contracts. The Executive's duty to administer a budget does not require that he approve contracts. The Executive can administer the budget by implementing existing contracts that have been ap-

proved. When a new contract is required, the Executive can negotiate the contract, submit it to the Commission, and, once it is approved, implement it. Similarly, the Executive's responsibility to implement the Commission's policies and procedures governing the award of contracts does not require the Executive to approve the contracts. The Executive can fulfill his responsibilities by following the Commission's policies and procedures for the awarding of contracts, including following requirements for competitive bidding and the use of sealed bids, and then submitting any proposed contracts to the Commission for approval. The Executive's authority to direct and control county departments, facilities, operations, and services does not require that he approve contracts.

Nor is the mere act of approving contracts an incidental power that is necessary or convenient to discharge the Executive's enumerated duties. Approval is but one step in the contracting process. As the Commission concedes, the Executive has significant powers related to contracting, including implicit or explicit authority to (1) decide what contracts to negotiate, (2) the terms of those contracts, (3) whether to submit a particular contract to the Commission for its review, (4) veto a resolution approving a contract, subject to the Commission's right to override that veto, (5) approve contracts that do not require Commission approval under the Commission's contract policy, (6) sign contracts on behalf of the County, and (7) implement existing contracts that have been approved. As compared to the Executive, the Commission plays a relatively passive role requiring it to simply review and approve or disapprove whatever contracts that the Executive has negotiated and chosen to submit to the Commission. In short, the Executive's role in the entire

contracting process is significant and certainly suffices to allow him to discharge his enumerated charter duties.

Next, the separation of powers doctrine does not require that the Executive have the authority to approve all contracts. Const 1963, art 3, § 2 provides:

> The powers of government are divided into three branches: legislative, executive and judicial. No person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution.

However, "the separation of powers doctrine stated in Const 1963, art 3, § 2 applies only to the state level of government and therefore does not apply to local governmental units." *Harbor Tel*, 253 Mich App at 50-51, citing *Rental Prop Owners Ass'n of Kent Co v Grand Rapids*, 455 Mich 246, 266-268; 566 NW2d 514 (1997), and *Armstrong v Ypsilanti Charter Twp*, 248 Mich App 573, 586-588; 640 NW2d 321 (2001). Further, no basis exists to consider foreign authorities regarding whether the executive or legislative branches have authority to approve contracts. As discussed earlier, our Legislature has "delegate[d] the function of allocating power in a charter county to the charter commission in the first instance, subject to final approval by the affected voters." *Oakland Co Comm'r*, 98 Mich App at 650. It is, therefore, the terms of the Macomb County Charter itself, rather than case law from other states, that governs whether the respective branches of Macomb County's government possess authority to approve contracts.

At any rate, even if the separation of powers doctrine is deemed to apply, it does not preclude the executive and legislative branches from acting in conjunction with one another "if it is so expressly stated in the

Constitution or the charter of the political unit governed thereby." *Local 321, State, Co & Muni Workers of America v Dearborn*, 311 Mich 674, 677; 19 NW2d 140 (1945). As discussed above, the Macomb County Charter grants specific responsibilities to *both* the Commission and the Executive regarding contracts. In no sense is the "whole power" of one branch being "exercised by the same hands which possess the whole power" of the other branch, *id.*, nor is one branch being encroached or aggrandized at the expense of the other, *Hopkins v Parole Bd*, 237 Mich App 629, 636; 604 NW2d 686 (1999). Although the Commission has authority to *approve* contracts, Macomb County Charter § 4.4(d), the Executive retains a broad range of other contract-related powers (either implicitly or explicitly, as the Commission concedes), including the power to decide what contracts to negotiate and submit to the Commission, to sign contracts, to veto resolutions approving contracts (subject to a possible override by the Commission), and to implement existing contracts, Macomb County Charter, §§ 3.9, 3.17, 8.6.1, and 8.10. Thus, the charter's dispersal of overlapping responsibilities reflects that the legislative and executive branches of Macomb County's government share power regarding the overall contracting process in a manner consistent with the separation-of-powers doctrine. *Hopkins*, 237 Mich App at 636. Accordingly, the charter's grant of contract-approval authority to the Commission does not offend separation-of-powers principles.

Next, we agree with the Commission that the Uniform Budgeting and Accounting Act (UBAA), MCL 141.421 *et seq.*, does not require granting contract-approval powers to the Executive. Charter counties are subject to restrictions that are imposed by general law. *O'Hara v Wayne Co Clerk*, 238 Mich App 611, 613; 607 NW2d 380 (1999). The UBAA provision at issue pro-

vides: "Unless otherwise provided by law, charter, resolution, or ordinance, the chief administrative officer[4] shall have final responsibility for budget preparation, presentation of the budget to the legislative body, and the control of expenditures under the budget and the general appropriations act." MCL 141.434(1). This provision does not require that the Executive approve county contracts because, as discussed, Macomb County Charter, § 4.4(d) expressly provides "otherwise" by granting that authority to the Commission. But even if this UBAA provision somehow superseded the charter, the Executive's authority to control expenditures does not authorize him to enter into contracts without the Commission's approval. The Executive may control expenditures in numerous other ways, though, including by negotiating contracts, presenting proposed contracts to the Commission, and implementing contracts that have been approved.

The trial court also observed that the UBAA defines an "appropriation" as "an authorization granted by a legislative body to incur obligations and to expend public funds for a stated purpose." MCL 141.422a(3). The court then noted that MCL 141.436(1) provides that "the legislative body of each local unit shall pass a general appropriations act for all funds except trust or agency, internal service, enterprise, debt service or capital project funds for which the legislative body may pass a general appropriation act." Further, the court cited MCL 141.436(3), which states:

> The general appropriations act shall set forth the amounts appropriated by the legislative body to defray the expenditures and meet the liabilities of the local unit for

---

[4] An elected county executive is the "chief administrative officer" of a county under the relevant definition of that term set forth in MCL 141.422b(3)(f).

the ensuing fiscal year, and shall set forth a statement of estimated revenues, by source, in each fund for the ensuing fiscal year.

Then, relying in part on an Attorney General (AG) opinion, OAG, 1979-1980, No 5816, pp 1082-1083 (November 17, 1980), the trial court concluded:

> Under MCL 141.436, the Board of Commissioners is required to pass a general appropriations act. Once an appropriation has been made, the expenditure of the appropriated funds is "authorized." That is, the department which is the recipient of the appropriation is now permitted "to incur obligations and to expend [the] funds. . . ." MCL 141.422a(3). There is nothing in the language of the UBAA which suggest [sic] that a county board of commissioners is free to renege on the appropriation, or to exercise continuing control over the appropriated funds.
>
> Macomb County Ordinance 2012-1, Resolution 12-1, and Resolution 11-23 purport to restrict the Executive's authority to expend appropriated funds by requiring him to seek approval of certain contracts. In other words, if these documents are given effect, the Board of Commissioners would effectively retain control over funds even after the funds have been appropriated. Since a retention of control over the funds post-appropriation is not allowed under the UBAA, the Court finds that Ordinance 2012-1, Resolution 12-1, and Resolution 11-23 contravene the UBAA and are invalid.

We disagree with the trial court's conclusion. This portion of the trial court's analysis addressed provisions related to the Commission's obligation to pass an appropriations act and the definition of an "appropriation." But the issue here does not concern the meaning of "appropriation" or whether the Commission has passed or must pass appropriation acts. Rather, the central question is whether the Commission or the Executive may approve county contracts and whether affording such authority to the Commission is super-

seded by the Executive's authority to control expenditures. The most relevant, specific UBAA provision on that question is MCL 141.434(1) which grants to the Executive the authority to control expenditures under the budget and the general appropriations act "[u]nless otherwise provided by law, charter, resolution, or ordinance[.]" Thus, regardless of what the UBAA says about the meaning of "appropriation" or the Commission's duty to pass appropriation acts, MCL 141.434(1) expressly qualifies the Executive's authority to control expenditures by the phrase "[u]nless otherwise provided by law, charter, resolution, or ordinance[.]" As discussed, Macomb County Charter, § 4.4(d) expressly grants to the Commission, and not to the Executive, the authority to approve contracts. To the extent, then, that this charter provision provides "otherwise" from what is set forth in the UBAA, the charter's allocation of power is expressly permitted by MCL 141.434(1). And because MCL 141.434(1) is the most specific UBAA provision addressing the chief administrative officer's control of expenditures, it must control over any UBAA provisions that are deemed to conflict with it. See *Gagnon v Glowacki*, 295 Mich App 557, 576; 815 NW2d 141 (2012) (noting that a specific statutory provision controls over a general statutory provision regarding the same matter).

Furthermore, AG opinions are not precedentially binding on courts. *Danse Corp v City of Madison Hts*, 466 Mich 175, 182 n 6; 644 NW2d 721 (2002). The Attorney General's opinion concerned whether a county board of commissioners, when adopting a general appropriations act, could "require elected county officials or other administrative officers of budgetary centers, to seek permission of the chief administrative officer or fiscal officer of the county in expending designated 'line-items' within an approved budget." OAG, 1979-1980, No 5816, p 1083

(November 17, 1980). The Attorney General concluded that requiring such "pre-expenditure permission" would violate the UBAA and the constitutional separation of powers doctrine. *Id.* The Attorney General's opinion did not address the precise issue of whether a county commission could exercise its authority under a charter to approve contracts of the county. In any event, to the extent that the Attorney General's opinion is read to say that county boards of commissioners may not approve contracts, the Attorney General's opinion is not binding, *Danse Corp,* 466 Mich at 182 n 6, and does not, in our view, reflect a persuasive interpretation of the UBAA or a proper understanding of the separation of powers doctrine, as discussed earlier.

Next, the Executive has not established that the Macomb County ordinance and contract policy are void for vagueness. "All ordinances are presumed to be constitutional . . . unless their unconstitutionality is clearly apparent." *Truckor v Erie Twp,* 283 Mich App 154, 161-162; 771 NW2d 1 (2009). The party challenging the constitutionality of an ordinance has the burden to establish that it is clearly unconstitutional. *Id.* at 162. "Also, a statute or ordinance is not unconstitutional simply because it is unwise or unfair." *Lansing v Hartsuff,* 213 Mich App 338, 344; 539 NW2d 781 (1995). "The 'void for vagueness' doctrine was primarily developed within the context of penal statutes and of laws threatening infringement of individuals' First Amendment rights." *In re Metro Council 23, American Federation of State, Co & Muni Employees, AFL-CIO,* 89 Mich App 564, 573; 280 NW2d 600 (1979). The doctrine might also be asserted to challenge a property-use regulation. *Yankee Springs Twp v Fox,* 264 Mich App 604, 606; 692 NW2d 728 (2004).

> A statute may be declared void for vagueness if (1) it is overbroad and infringes First Amendment freedoms, (2) it does not provide fair notice of the conduct it regulates, or (3) it gives the trier of fact unstructured and unlimited discretion in concluding whether the statute has been violated. Vagueness challenges that do not involve a challenge to First Amendment freedoms are examined in light of the facts of the particular case. . . . In determining whether a statute is void for vagueness, the entire text of the statute is examined and the words of the statute are given their ordinary meanings. When a statute is challenged on the basis that it fails to provide fair notice, the statute must give a person of ordinary intelligence a reasonable opportunity to know what is prohibited or required. [*STC, Inc*, 257 Mich App at 539 (citations omitted).]

Here, the Executive's vagueness challenge fails because he has not established, or even argued, that Macomb County Resolution 11-23 (requiring that county contracts over $15,000 must be approved by the commission), Macomb County Ordinance 2012-1 (detailing policies and procedures governing the award of county contracts), and Macomb County Resolution 12-1 (detailing amendments to resolution 11-23) are penal, effectuate a deprivation of property interests, or threaten to infringe on individuals' First Amendment freedoms. The ordinance and resolutions thus do not fall within the category of enactments against which a void-for-vagueness challenge is usually asserted. But to the extent that a void-for-vagueness claim could be made, no basis exists to conclude that the ordinance and resolutions infringe on First Amendment freedoms, fail to provide fair notice of the conduct regulated, or give a trier of fact unstructured and unlimited discretion in determining whether they have been violated. *Id.* at 539. In our view, Resolution 12-1, § II.B.3 adequately describes the types of contracts for which the Commis-

sion's approval is required and thus affords adequate notice. Accordingly, the Executive's void-for-vagueness challenge fails.

Next, the Commission argues that the trial court abused its discretion by granting the Executive's request for attorney fees. We agree. Generally, this Court reviews for an abuse of discretion an award of attorney fees. *Hines v Volkswagen of America, Inc*, 265 Mich App 432, 438; 695 NW2d 84 (2005). A trial court abuses its discretion when its decision is outside the range of reasonable and principled outcomes. *Augustine v Allstate Ins Co*, 292 Mich App 408, 424; 807 NW2d 77 (2011). "[A]ny questions of law that affect the determination are reviewed de novo." *Hines*, 265 Mich App at 438.

A court may award costs and attorney fees only if specifically authorized by a statute, a court rule, or a recognized exception to the American rule (which mandates that a litigant be responsible for his or her own attorney fees). *In re Temple Marital Trust*, 278 Mich App 122, 139; 748 NW2d 265 (2008). In this case, the trial court granted the Executive's request for attorney fees on the basis of what the court viewed as "analogous" case law concerning the judiciary's inherent power to employ counsel to secure necessary funding.

In *46th Circuit Trial Court v Crawford Co*, 476 Mich 131, 143; 719 NW2d 553 (2006), our Supreme Court recognized that the judiciary has an " 'inherent power' to compel appropriations sufficient to enable it to carry out its constitutional responsibilities [as] a function of the separation of powers provided for in the Michigan Constitution." This "inherent power" is "sharply circumscribed" and "contemplates only the power, when an impasse has arisen between the legislative and judicial branches, to determine levels of appropriation

that are 'reasonable and necessary' to enable the judiciary to carry out its constitutional responsibilities." *Id.*

This Court has held that the judiciary's "inherent power . . . include[es] the power to employ counsel and recover reasonable attorney fees arising out of such inherent power litigation." *46th Circuit Trial Court v Crawford Co (On Remand)*, 273 Mich App 342, 344-345; 729 NW2d 914 (2006) (quotation marks, brackets, and citation omitted). Recovery of reasonable attorney fees is not limited to cases in which the inherent-powers litigation is successful. *Id.* at 345. Otherwise, "[t]he judiciary, only contemplating litigation because of a perceived budget shortfall, would be hard-pressed to employ outside counsel whose unreimbursed fees might exacerbate that shortfall." *Id.* at 345-346. "The judicial branch, which has no independent financial means to undertake litigation concerning funding, must be empowered to undertake that litigation when necessary to protect the judicial function." *Id.* at 346 n 1.

This caselaw regarding the judiciary's inherent power to compel necessary and reasonable funding, including reasonable attorney fees, does not apply here. The present dispute is not about a lack of funding that imperils the constitutional responsibilities of a branch of government. It instead arises out of a dispute whether the Executive or the Commission has authority to approve county contracts. Cf. *Wayne Co Sheriff v Wayne Co Bd of Comm'rs*, 148 Mich App 702, 704, 712; 385 NW2d 267 (1983) (holding that the rationale of requiring the payment of judges' attorney fees to ensure the autonomy of the judiciary was inapplicable in a case involving budget cuts that eliminated a county sheriff's patrol and investigation division).

Moreover, the Executive has failed to establish that he lacks independent financial means to undertake this

litigation. The Executive has not disputed the Commission's assertion that "the Commission has appropriated money for the Executive to use for legal matters." If the amount appropriated is insufficient to fund this litigation, the Executive may propose an appropriation amendment. Macomb County Charter, § 8.11.2 provides:

> If the Executive certifies to the Commission that expenditures have exceeded appropriated levels and submits a proposed appropriation amendment, the Commission shall amend appropriations to avoid the deficit. If the Commission fails to amend the appropriation ordinance within 45 days after the certification of the excess expenditures, the requested appropriation amendment submitted by the Executive becomes effective.

The Commission states that the Executive has never submitted a proposed appropriation amendment, and the Executive has not disputed this assertion.

In general, this Court does not interfere in a county board of commissioners' appropriations decisions absent a failure to budget funds to allow a county executive officer to fulfill statutory or constitutional duties. *Wayne Co Prosecutor v Wayne Co Bd of Comm'rs*, 93 Mich App 114, 121-123; 286 NW2d 62 (1979). "The judiciary will not involve itself with the truly discretionary appropriations decisions of a county board, unless the action taken is so capricious or arbitrary as to evidence a total failure to exercise discretion." *Id.* at 122-123. See also *Wayne Co Sheriff*, 148 Mich App at 704-705. The Executive has not claimed or established in this case that the Commission has failed to appropriate funds needed to carry out any statutory or constitutional duties. Indeed, it is difficult to understand how the Executive could establish such a claim where (1) he has not shown that initiation of this litigation was

necessary to carry out any statutory or constitutional responsibilities, and (2) in any event, he has been allocated funds to use for legal matters. And, if that allocation were inadequate, he may submit an appropriation amendment as expressly permitted under the charter. Therefore, because no basis exists to order the Commission to appropriate additional sums to cover the Executive's attorney fees, the trial court abused its discretion in doing so.

We reverse and remand for entry of summary disposition for the Commission. We do not retain jurisdiction.

K. F. KELLY, P.J., and SERVITTO, J., concurred with MARKEY, J.