*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MARK A. HACKEL,

        Plaintiff/Counterdefendant-Appellee,

v

MACOMB COUNTY BOARD OF
COMMISSIONERS,

        Defendant/Counterplaintiff-Appellant.

UNPUBLISHED
October 5, 2023

No. 362775
Macomb Circuit Court
LC No. 2018-001252-CZ

Before: REDFORD, P.J., and O'BRIEN and FEENEY, JJ.

FEENEY, J. (*dissenting*).

While affirming the majority's recitation of the facts in this case and appreciating the approach it pursued, I respectfully dissent.

Much of the parties' arguments, as well as the trial court's opinion, focuses on plaintiff's authority pursuant to the charter to "control" the operations of the county departments under his supervision in contrast to defendant's authority to enact ordinances and its right to receive information from plaintiff in the budgeting process. But I find a more fundamental question posed in this case.

As defendant observes in its brief, plaintiff had the authority under §3.9 of the Macomb County Charter to veto the ordinance but chose not to do so. Rather, plaintiff merely chose to not comply with the ordinance's requirement to provide defendant with real-time, read-only access to the financial software. This is not the first time that plaintiff has chosen to ignore the Macomb County Board of Commissioners' actions rather than use his veto authority. In *Macomb County Prosecutor v Macomb Co Executive*, 341 Mich App 289; 989 NW2d 864 (2022), the plaintiff prosecutor submitted to the Macomb County Executive (our plaintiff in the current case) a budget request for additional staffing in the prosecutor's office. The Executive rejected the request in part, submitting a proposed budget to the Board of Commissioners that did provide for some additional staffing but not as many positions as the prosecutor had requested. *Id.* at 295. The prosecutor then went directly to the Board and requested an additional six positions beyond that

requested in the Executive's proposed budget. The budget the Board adopted included an appropriation for four of the six additional positions plaintiff requested. *Id*. at 295-296.[1]

The Executive did not use his line-item veto power to reject the appropriation. Rather, he informed the Board that it lacked the authority to approve any budget not recommended by him and that he as the Executive would not disburse the funds for the additional positions. *Id*. at 297. The prosecutor brought an original action for declaratory judgment and mandamus in this Court. This Court concluded that a county Board of Commissioners has the authority to appropriate money not recommended by the County Executive. Specifically, the Court noted that the defendant has the power of a line-item veto over the budget:

> We conclude that these provisions of the county charter allow the Board to appropriate more funds for a line item than the amount reflected in the recommended budget itself. Specifically, § 3.9 gives the authority to the Executive to veto "a line item of an ordinance appropriating money. . . ." If the board were not permitted to appropriate more funds for a line item than the amount specified in the recommended budget itself, then the authority to exercise a line-item veto would be completely redundant. A line-item veto never would be exercised because the Board would never be able to appropriate the undesired funds, from the perspective of the Executive, because it would be solely within the Executive's discretion as to the exact amount of funds allocated. *Id.* at 307-308.[2]

Ultimately, this Court concluded that the Executive (our plaintiff) must either disburse the funds for the additional positions or seek the Board's amendment to the appropriations ordinance, and it granted the prosecutor's request for declaratory relief and issued a writ of mandamus. *Id*. at 318.

In his brief on appeal, plaintiff explains in a footnote his decision not to exercise his veto power. He explains that, because this provision was not an appropriation, he could not exercise a line-item veto and would have been required to veto the entire ordinance including the entire annual budget for the county.[3] While this may have presented a difficult decision for plaintiff to

---

[1] The approved budget included a line-item appropriation for the prosecutor's office personnel that was $299,300 more than the executive's proposed budget amount, with the additional appropriation funding the additional personnel. *Id.* at 295-296.

[2] This Court went on to explore the Executive's authority to submit "a *proposed* annual budget" that is "*recommended*" to the Commission. *Id.* "The use of such tentative language as "proposed" and "recommended" indicates that the Executive does not have unilateral power to impose a final budget. Simply put, the County Charter creates a scheme whereby the budgetary process is initiated by the Executive through issuance of a recommended budget, and then the Board has the final authority to appropriate funds—subject, of course, to the veto power of the Executive." *Id.* at 308. Indeed, the Board of Commissioners "bears primary responsibility for the final budget." *Id*. at 307.

[3] It is not entirely clear from the wording of the charter whether the line-item veto is limited to only those line items which appropriate funds or could include substantive provisions. But my

make, it is hardly unique in politics that the legislative branch may include a provision unpalatable to the executive in a large or important bill that the executive might find difficult to veto. But that does not justify the decision to ignore the disagreeable provision rather than veto the entire enactment. Such executive acquiescence occurred in this case, and it should not be encouraged or enforced.

This point was discussed in Rappaport, *The Unconstitutionality of "Signing and Not-Enforcing,"* 16 William & Mary Bill of Rights J 113 (2007). The primary thesis of Professor Rappaport's article is that, in most instances, it is unconstitutional for a President to sign a bill passed by Congress, rather than vetoing it, when the President believes that a portion of the bill is unconstitutional and the President intends to not enforce that portion. He discusses the point about whether a President should veto a bill in this scenario:

> Perhaps the strongest argument for allowing the President to sign a bill he does not intend to enforce arises when there is a single unconstitutional provision in an otherwise constitutional bill. Does the President really have to veto a sizeable bill because one small provision in it is unconstitutional? Does he even have to veto a large spending bill that is necessary to fund the government?

> In a word, yes. The President cannot avoid his constitutional responsibilities simply because the Constitution obligates him to exercise a burdensome veto. Like all constitutional actors, the President's powers are limited, and he cannot expand them out of convenience. The power of presidential review arises because the President claims that the Constitution precludes him from enforcing an unconstitutional provision. The President cannot make that claim while at the same time arguing that he can sign such a provision into law because it would be burdensome to veto it. The President must accept the bitter and the sweet of his powers.

> There is, moreover, nothing peculiar about the President having to incur this burden, because it is uncontroversial that he must bear similar burdens in other situations. Suppose Congress presents a large bill to the President that contains a single provision that the President strongly opposes on policy grounds. It is absolutely clear that the President cannot item-veto the provision he dislikes simply because vetoing the bill would be burdensome. It is recognized that the President must either accept or veto the entire bill because the nature of his veto requires it. [*Id*. at 121-122; footnote omitted.]

It is certainly true that there is a difference in the separation of powers issues between a President under the Constitution and a county executive under a county charter.[4] But the basic

---

reasoning applies in either case, so I accept, without deciding, that plaintiff's only option would have been to veto the entire ordinance.

[4] See *Hackel v Macomb Co Commission*, 298 Mich App 311, 327; 826 NW2d 753 (2012).

principle remains the same: plaintiff's objection to the ordinance provision, whether grounded in a belief that it is bad policy or in a belief that it exceeds defendant's authority under the county charter or otherwise invades plaintiff's authority under the charter, does not justify ignoring that provision instead of vetoing the ordinance.[5]

This Court has discussed the obligation of each branch of government to exercise its powers and duties consistent with the Constitution. For example, in *Michigan Alliance for Retired Americans v Secretary of State*, 334 Mich App 238, 250-251; 964 NW2d 816 (2020), we concluded that the Legislature has standing to intervene in a lawsuit in order to defend a statute that the executive branch refuses to defend because the executive disfavors the law:

> [T]he Legislature sought to intervene after defendants, constitutional officers within the Executive Branch, declined to appeal the Court of Claims decision. The Legislature, as a body made up of the elected representatives of the citizens of Michigan, is essentially taking the place of defendants in this case. Indeed, the Court of Claims initially denied the Legislature's motion to intervene and only permitted intervention after the Executive Branch abdicated its role in this litigation. As noted by this Court in *League of Women Voters of Mich v Secretary ofState*, 333 Mich App 1, 11; 959 NW2d 1 (2020) (League II) (opinion by SAWYER, P.J.),
>
>> just as a legislative body cannot legitimately enact a statute that is repugnant to the Constitution, nor can an executive-branch official effectively declare a properly enacted law to be void by simply conceding the point in litigation. To vest that power in an official would effectively grant that official the power to amend the Constitution itself.

Or, as Judge BOONSTRA put it more bluntly in his concurrence in *Retired Americans*, 334 Mich App at 265, "After all, it would be much easier if a benevolent dictator could simply rule by decree without having to endure the inconvenience of others' input." But plaintiff must deal with the inconvenience of defendant's enactments, with plaintiff choosing to either veto the enacted ordinance or following it.[6] Or, to put it more succinctly, the executive, be it governor or county

---

[5] Indeed, plaintiff's position is not consistent with being respectful of the separation of powers. Plaintiff's approach-- declaring a provision of a properly enacted ordinance to be a violation of the charter and, therefore, he may ignore it--invades the authority of the judicial branch. Just as plaintiff must guard the authority vested in the executive, we must guard the authority vested in the judiciary. And, under the separation of powers principle, it is the judiciary that is empowered to ultimately determine whether a legislative enactment exceeds the legislative branch's authority to enact.

[6] I take note that, according to the minutes of the November 9, 2017 Board of Commissioners meeting posted on the county's website, Ordinance 2017-04 passed unanimously, 12-0. Presumably, had plaintiff vetoed the ordinance, that veto would have been overridden. See Charter §4.4(f) (a veto may be overridden by a 2/3 vote of the commissioners).

executive, has an obligation to veto a bill that the executive believes violates the constitution, or in this case the county charter.

I would also note that allowing plaintiff to simply ignore or acquiesce to portions of an ordinance that the Executive chooses not to veto would effectively create a line-item veto where none is authorized under the charter. That is, as plaintiff acknowledges, his line-item veto authority only extends to appropriations; otherwise, the entire ordinance must be vetoed. But by allowing plaintiff to simply ignore that portion of an ordinance that he disfavors effectively creates a line-item veto, contrary to the express provisions of the county charter, over that disfavored provision. Plaintiff's argument is internally inconsistent—while arguing that he explicitly lacks the authority to exercise a line-item veto over a substantive provision in an ordinance, he is essentially arguing that he has the implicit authority to do so by simply ignoring provisions within an ordinance that he disagrees with and presumably would have exercised a line-item veto over had he possessed that authority.

Furthermore, the conclusion that plaintiff must comply with the ordinance because he is not permitted to ignore it would be the same even if I were to agree with plaintiff's basic argument that the county charter gives the Executive the authority to control access to the financial software. To summarize plaintiff's argument, the charter gives the Executive control "over all County departments except for departments headed by Countywide Elected Officials other than the Executive, facilities, operations, and services except as otherwise provided by this Charter or law." Charter, §3.5(a). And, control over the operations and services of the finance and IT departments gives plaintiff control over access to the software used by those departments (i.e., the finance software). But, even if the charter gives plaintiff control over who has access to the software, it necessarily follows that plaintiff gave access to the defendant when plaintiff chose not to veto Ordinance 2017-04.

In sum, by leaving his veto pen in the desk drawer rather than using it, plaintiff gave his imprimatur to the ordinance. By doing so, he committed himself to following the ordinance. Once again, he was presented with a binary choice: (1) allow the ordinance to take effect without a veto and comply with the ordinance, or (2) veto the ordinance.[7] Ignoring the ordinance without vetoing it is not one of the available options.

_____

[7] Lest there be confusion, I am not suggesting that there is no scenario in which the Executive cannot challenge an ordinance enacted by the Board. For example, this opinion should not be read as limiting the Executive's ability to challenge in court an ordinance enacted over the Executive's veto (and the veto is overridden) where the Executive believes that the ordinance improperly invades the authority granted to the Executive under the charter. This scenario would not present a case where the veto is issued merely over a disagreement in the wisdom of a particular policy. Nor is it a case where the Executive acquiesced to the ordinance by failing to veto it. Rather, it presents a true case where the Executive is aggrieved by the actions of the Board, attempted to stop the ordinance by issuing a veto, and must now turn to the courts to preserve the Executive's authority under the county charter.

For these reasons, I conclude that defendant was entitled to both declaratory relief and mandamus. *See Macomb Co Prosecutor*, 341 Mich App at 315-316, 318. As for declaratory relief, for the reasons discussed, plaintiff is bound by the ordinance that he failed to veto.[8] It is therefore binding and enforceable against plaintiff. As for mandamus, the ordinance establishes defendant's right to being provided access to the software and plaintiff's duty to provide that access.[9] And, while the general question whether a particular person should be granted access is discretionary in nature, because the ordinance specifically compels that access be granted, that act has become ministerial rather than discretionary. And there is no other remedy than compliance with the ordinance.

In short, this case is less about the substance of the ordinance and the county charter and more about process. Specifically, this case raises important issues regarding the process the Executive should pursue to both respect the principle of the separation of powers and protect the authority vested in his office. The process is not to "sign and not enforce" as Professor Rappaport would describe it. Rather, it is to exercise the executive's veto power and, if that veto is overridden, to turn to the courts for a determination whether the legislative branch crossed the line and invaded the jurisdiction of the executive.

For these reasons, I conclude that the trial court erred in failing to grant defendant's requested relief. I would reverse.


/s/ Kathleen A. Feeney

---

[8] And to be clear, I am not concluding that defendant had the authority to enact that provision over plaintiff's veto. I do not address that ultimate question. Rather, I conclude that the ordinance is enforceable because plaintiff did not exercise his veto authority and cannot now complain that it invades the power of the executive; at a minimum, the Executive granted access to the software by failing to exercise his veto authority. Had plaintiff exercised his veto power and defendant then overrode that veto, and plaintiff then turned to the courts to protect what he perceived was the power of the executive branch, that may have called for a different result.

[9] *Macomb Co Prosecutor*, 341 Mich App at 316, citing *Berry v Garrett*, 316 Mich App 37, 41; 890 NW2d 882 (2016).