# Syllabus

Chief Justice:
Megan K. Cavanagh

Justices:
Brian K. Zahra
Richard H. Bernstein
Elizabeth M. Welch
Kyra H. Bolden
Kimberly A. Thomas
Noah P. Hood

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kimberly K. Muschong

HACKEL v MACOMB COUNTY BOARD OF COMMISSIONERS

Docket No. 166363. Argued on application for leave to appeal April 9, 2025. Decided June 16, 2025.

Mark A. Hackel, the Macomb County Executive, brought an action in the Macomb Circuit Court in 2018 against the Macomb County Board of Commissioners (the Commission), seeking declaratory relief and a writ of mandamus on a matter regarding the scope of the Commission's authority. This complaint was later dismissed, and the dismissal order was not appealed. However, the Commission filed a counterclaim seeking declaratory relief and a writ of mandamus ordering Hackel to grant the Commission's director of legislative affairs real-time, read-only access to the county's financial management software, arguing that this access was necessary for the Commission to perform its budgeting obligations under the county's home rule charter. The Commission had requested such access in 2017, but Hackel refused to grant the request. When the Commission adopted its general appropriations ordinance for Fiscal Year 2018 (Ordinance No. 2017-04), it included a provision, § 10(H), that required the Commission's director of legislative affairs to be given this access. Despite the inclusion of the same or similar language in each subsequent annual appropriations ordinance through fiscal year 2024, Hackel has never authorized the finance department to grant access to the software. The parties filed cross-motions for partial summary disposition of the Commission's counterclaim, which asserted that § 10(H) required access to the software and that such access was consistent with the Uniform Budgeting and Accounting Act (UBAA), MCL 141.421 *et seq*. In a January 13, 2022 opinion and order, the circuit court denied the Commission's motion and granted Hackel's motion, holding that Ordinance 2017-04, § 10(H) unlawfully infringed Hackel's authority under § 3.5(a) of the county's charter, which gives the county executive control over those county departments not headed by other countywide elected officials except as otherwise provided by the charter or law. In an August 2022 order, the circuit court dismissed all remaining claims in the Commission's counterclaim by stipulation of the parties. The Commission appealed the August 2022 final order by right. The Court of Appeals, REDFORD, P.J., and O'BRIEN, J. (FEENEY, J., dissenting), affirmed the circuit court in an unpublished per curiam opinion issued October 5, 2023 (Docket No. 362775), holding that Ordinance 2017-04, § 10(H) was neither valid nor enforceable because it impermissibly interfered with the county executive's right to control county departments under § 3.5(a) of the county charter. The Commission sought leave to appeal in the Supreme Court, which ordered and heard oral argument on whether to grant the application or take other action. 513 Mich ___ (June 21, 2024).

In a unanimous opinion by Justice WELCH, the Supreme Court, in lieu of granting leave to appeal, *held*:

Section 3.5(a) of the Home Rule Charter of Macomb County gives the Commission legal authority to require the county executive to provide digital real-time, read-only access to financial information by "law," which includes a validly enacted local ordinance. Ordinance 2017-04, § 10(H) did not directly conflict with other provisions of the county charter or state law and therefore was presumptively valid. The Court of Appeals judgment was reversed and the case was remanded to the circuit court.

1. Under the Macomb County charter, the primary powers of governance are divided between the county executive and the Commission. Section 3.5 of the charter grants the county executive the authority and duty to supervise, coordinate, direct, and control all county departments not headed by other countywide elected officials except as otherwise provided by the charter or law, to enforce all county laws except as provided for by the charter or law, to discharge the county executive's duties, and to exercise all incidental powers necessary or convenient for the discharge of the duties and functions specified in the charter or lawfully delegated to the county executive. Section 4.4 of the charter grants the Commission legislative powers, including the authority to adopt, amend, or repeal ordinances or resolutions, as well as the authority to exercise all the legislative powers that the charter could specifically enumerate as provided by the Constitution and state laws. The Commission's general legislative authority to act through ordinances as it relates to local matters was firmly established in state law.

2. Under § 8.6.1 of the Macomb County charter, a proposed annual budget prepared by the county executive must contain specified minimum information and a proposed appropriations ordinance, as well as any information required by law, ordinance, or the Commission. The charter provides that the Commission, which bears primary responsibility for the final budget, must review the recommended budget, make any desired changes, and then adopt "a balanced line item operating budget and an appropriations ordinance in accordance with the requirements of law." It was undisputed that, at a minimum, the Commission was authorized by the charter and the UBAA to determine what information must be included in and transmitted with the proposed budget prepared by the county executive. The parties contested whether requiring real-time access to financial management software exceeded the county executive's obligation to transmit specific information with the proposed budget.

3. The adoption of Ordinance No. 2017-04, § 10(H) was a valid exercise of the Commission's legislative authority. Section 3.5(a) of the charter states that the management and supervisory authority held by the county executive can be limited as otherwise provided by the charter "or law." If a validly enacted ordinance constitutes a "law" for purposes of § 3.5(a), then it would be within the Commission's authority to impose at least some conditions on the county executive's management and supervisory powers through an ordinance. The charter did not define "law" or "ordinance," but both the common and technical definitions of those terms are exceptionally broad. Although the use of "law" in a specific context or in conjunction with a specific modifier can narrow the scope of the term, the starting point for interpretation must be a broad and inclusive meaning. The Commission's argument that a validly enacted local ordinance

is a subset of "law" was well supported and consistent with Michigan law. Although more limited in scope and applicability than a state statute, an ordinance enacted by a county or municipal legislative body represents an analogous form of positive law with binding legal effect within the relevant jurisdiction. If properly enacted and adopted without a veto, a county ordinance becomes the law within the jurisdiction. An ordinance is valid and enforceable if it is both consistent with the powers conferred by the state in its Constitution and statutes and within the scope of authority delegated by the electorate as set forth in the relevant charter. There was no apparent reason to interpret the phrase "by . . . law" in § 3.5(a) as excluding validly enacted county ordinances given the surrounding context. Unlike in other sections of the charter, in § 3.5(a), the term "law" was not expressly confined to laws passed by the Michigan Legislature, indicating that the choice not to limit the meaning of the phrase in § 3.5(a) was intentional. Therefore, the most rational way to harmonize the use of "law" within § 3.5, and within Article III as a whole, was to read the term as including validly enacted county ordinances unless surrounding context or a textual modifier clearly provided for a narrower meaning. This interpretation of "law" was not necessarily applicable to all other sections in all other articles of the Charter, which used the unmodified form of "law" inconsistently, but an ordinance still cannot directly conflict with or override an unambiguous provision of the charter or state law.

4. Ordinance 2017-04, § 10(H) was validly adopted as a law within Macomb County. Although the ordinance imposed a degree of restriction on the county executive's control over the county's information technology and finance departments, § 3.5(a) of the county charter permits such a restriction if it is accomplished by the charter "or law" and does not create a conflict between the ordinance and the Charter. Nothing in § 3.5 clearly indicated that "law" was intended to be so narrow as to exclude validly enacted ordinances. Accordingly, Ordinance No. 2017-04, § 10(H) was effective and enforceable after its adoption absent a clear conflict with a charter provision other than § 3.5(a) or a superior form of law, and neither party suggested that such a conflict existed. Section 3.5(b) of the charter further implies that the county executive has some form of a legal duty to enforce Ordinance 2017-04, § 10(H), irrespective of whether the ordinance requires more of the county executive than the UBAA or § 8.6.1 of the charter. Therefore, the plain language of Ordinance 2017-04, § 10(H) required Hackel to provide the Commission or its agent with access to real-time, read-only access to financial software programs used by the county. This conclusion made it unnecessary to address whether § 8.6.1 of the charter separately imposed such a requirement.

Court of Appeals judgment reversed; case remanded to the Macomb Circuit Court for further proceedings.

Justice HOOD did not participate because the Court considered this case before he assumed office.

# OPINION

Chief Justice:
Megan K. Cavanagh

Justices:
Brian K. Zahra
Richard H. Bernstein
Elizabeth M. Welch
Kyra H. Bolden
Kimberly A. Thomas
Noah P. Hood

FILED June 16, 2025

STATE OF MICHIGAN

SUPREME COURT

MARK A. HACKEL,

      Plaintiff/Counterdefendant-
      Appellee,

v                                   No. 166363

MACOMB COUNTY BOARD OF
COMMISSIONERS,

      Defendant/Counterplaintiff-
      Appellant.

BEFORE THE ENTIRE BENCH (except HOOD, J.)

WELCH, J.

This appeal concerns whether Macomb County's legislative branch has authority to require the county's executive branch to provide it with digital real-time, read-only access to financial information that the legislative branch deems necessary to perform its budgeting obligations. We hold that § 3.5(a) of the Home Rule Charter of Macomb County (the Charter) gives defendant, the Macomb County Board of Commissioners (the

Commission), legal authority to require plaintiff, Mark A. Hackel (the County Executive), to provide such access by "law," which includes a validly enacted local ordinance. The ordinance at issue does not directly conflict with other provisions of the Charter or state law and therefore is presumptively valid. Accordingly, we reverse the judgment of the Court of Appeals and remand to the circuit court for further proceedings that are consistent with this opinion.

## I. FACTUAL BACKGROUND

In Macomb County, the Commission is vested with legislative power and the County Executive is vested with executive power. Charter, §§ 3.1; 4.1. The Commission and the County Executive share responsibilities in the preparation and approval of the annual county budget. The Charter requires the County Executive to "prepare and administer a comprehensive balanced budget" and "transmit" it to the Commission at least 90 days before the beginning of the next fiscal year. Charter, § 8.6.1. The budget must contain, "at a minimum, the budget message, budget document, the proposed appropriations ordinance containing the information required by law, and *any information required by the Commission, law, or ordinance.*" *Id.* (emphasis added). The County Executive oversees the county's finance department. Charter, § 3.5(a). Specifically, the Charter states that the County Executive has "the authority, duty, and responsibility" to "[s]upervise, coordinate, direct, and control all County departments except for departments headed by Countywide Elected Officials other than the Executive . . . *except as otherwise provided by this Charter or law.*" *Id.* (emphasis added). The finance department is required to "[a]dminister [the] financial affairs of the county in accordance with law."

2

Charter, § 7.4(b). To carry out these duties, the finance department assists the County Executive with preparation of the annual comprehensive balanced budget.

The finance department uses financial management software provided by third-party vendors, which has included a program called OneSolution. The parties' briefs indicate that OneSolution includes a real-time record of all county financial data used by the County Executive and all county departments. OneSolution allows users to search, retrieve, and sort pertinent county financial data. The software offers granular detail as to all county expenditures, which can be broken down by the county department and line item.

The Commission has historically been provided with access to the county's financial management software for the purpose of managing the Commission's internal administrative budget, but it has not been provided with real-time access to information regarding other county departments and operations. Rather, to obtain additional information for use in creating and approving the annual budget, the Commission's director of legislative affairs has been required to request specific information from the finance department. The finance department or the County Executive would then respond to the request with printed paper records. According to the Commission, such paper records can quickly become outdated, and the lack of access to real-time information has impaired the Commission's abilities in relation to the budgeting process. The Commission has also alleged that responses to requests for information related to budgeting have sometimes been incomplete or untimely. The Commission further noted past instances in which the County Executive's proposed budget failed to break down departmental budgets and other expenditures by line item. Because of these perceived problems, during or before the 2017 calendar year, the Commission began requesting real-time, read-only access to

OneSolution. Plaintiff, acting in his official capacity as County Executive, refused to grant the request.

On November 9, 2017, the Commission unanimously adopted the Fiscal Year 2018 Comprehensive General Appropriations Ordinance (Ordinance No. 2017-04). Subsection 10(H) of the ordinance added the following new requirement: "The Director of Legislative Affairs for the Board of Commissioners shall be given real-time, read-only access to the financial software program the County uses." The ordinance was made "effective immediately upon publication of a notice of enactment," Ordinance No. 2017-04, § 14, and the County Executive did not veto it. The Commission has included the same or similar language in each subsequent annual appropriation ordinance through fiscal year 2024.[1]

Despite the enactment of the financial management software access requirement for each fiscal year since Ordinance No. 2017-04 was adopted, the County Executive has never

---

[1] We note that the financial management software used by the county has changed at least once during the pendency of this litigation. Although only Ordinance No. 2017-04 is on review before this Court, in 2023, the Commission revised the annual appropriations ordinance language for fiscal year 2024 to provide as follows:

> The Director of Legislative Affairs for the Board of Commissioners shall be given real-time, read-only access to any and all financial software programs the County uses, including, but not limited to "Workday." Within 24 hours (or otherwise agreed to in writing by the Chief of Staff for the Board of Commissioners) of a written request by the Chief of Staff for the Board of Commissioners for financial information, the Executive must provide, transmit, and furnish to the Chief of Staff for the Board of Commissioners any requested financial information, which may include but is not limited to the following: vendor reports and year-to-date budget reports by department line item (containing the same line item information and format available to the Executive and respective department), in an electronic, sortable format, such as a spreadsheet. [Ordinance No. 2023-04, § 10(G).]

4

authorized the finance department to grant the Commission's designee access to the software. The Commission asserts that the ordinance requires access to the software and that such access is consistent with the Uniform Budgeting and Accounting Act (UBAA), MCL 141.421 *et seq*.

## II. PROCEDURAL HISTORY

On March 28, 2018, the County Executive filed a three-count complaint against the Commission, seeking declaratory relief concerning different matters that are no longer at issue. On May 30, 2018, the Commission filed an answer, as well as a counterclaim. The counterclaim sought, in relevant part, declaratory relief and a writ of mandamus ordering plaintiff to comply with the UBAA, the Charter, and Ordinance No. 2017-04 by granting real-time, read-only access to the county's financial management software to the Commission's director of legislative affairs. The circuit court dismissed the County Executive's complaint in June 2019, and that order was not appealed. Discovery and pretrial litigation continued for several years. The parties later filed cross-motions for partial summary disposition of the Commission's counterclaim, and the circuit court took them under advisement following oral argument in September 2021.

In a January 13, 2022 opinion and order, the circuit court denied the Commission's motion and granted the County Executive's motion, holding that Ordinance 2017-04, § 10(H) unlawfully infringed the County Executive's authority under Charter, § 3.5. In an August 2022 order, the circuit court dismissed all remaining claims in the Commission's counterclaim by stipulation of the parties. The Commission appealed by right from the August 2022 final order.

5

In an unpublished, split decision, the Court of Appeals affirmed the circuit court. *Hackel v Macomb Co Bd of Comm'rs*, unpublished per curiam opinion of the Court of Appeals, issued October 5, 2023 (Docket No. 362775). The majority held that Ordinance 2017-04, § 10(H) was neither valid nor enforceable because it impermissibly interfered with the County Executive's right to control county departments under Charter, § 3.5(a). *Id*. at 13-14. Although the Commission has the power to adopt ordinances under Charter, § 4.4(a), the majority noted that a county ordinance would not be enforceable if it provided for greater or lesser rights than those expressed in the Charter or if it was inconsistent with restrictions imposed by the state Constitution or state statutes. *Id*. at 7, citing *Wayne Co v Wayne Co Retirement Comm*, 267 Mich App 230, 251; 704 NW2d 117 (2005); *Bivens v Grand Rapids*, 443 Mich 391, 400-401; 505 NW2d 239 (1993). The panel opined that Charter, § 3.5(a) vested the power to control access to the county's financial management software in the County Executive because the county's finance and information technology departments are not headed by elected officials. The majority held that this power includes the right to exclude others. *Id*. at 8, citing *Breakey v Dep't of Treasury*, 324 Mich App 515, 526 n 8; 922 NW2d 397 (2018).

Although the majority acknowledged a limitation on the County Executive's authority through the phrase "as otherwise provided by this Charter or law," Charter, § 3.5(a), it framed this limitation as being confined to actions of the County Executive that "violate[] the Macomb County Charter or other state law," *Hackel*, unpub op at 8-9. According to the majority, Charter, § 8.6.1 required the County Executive to "transmit to" the Commission a comprehensive budget along with "information required by [the Commission], law, or ordinance," this provision did not give the Commission a right to

6

access the information in a manner of its choosing, such as by accessing the county's systems on its own. *Id*. at 10-11. Charter, § 8.6.1 entitled the Commission to receive the information it requires for budgeting purposes and required the County Executive to transmit it rather than providing the Commission the ability to gather the information itself. *Id*. Similarly, the majority opined that MCL 141.434(5), a provision of the UBAA, merely required the County Executive to "furnish" information that the Commission requires for budgeting upon request. *Id*. at 11-12.

The majority held that because the challenged ordinance provided the Commission with " 'greater rights . . . than those expressed in the charter' " and fell outside " 'the scope of authority delegated' " by the Charter, the ordinance was invalid and unenforceable. *Id*. at 7, quoting *Wayne Co Retirement Comm*, 267 Mich App at 251, and *Bivens*, 443 Mich at 397, respectively. Accordingly, the majority concluded that the circuit court properly granted the County Executive's motion for summary disposition and denied the Commission relief.

Judge FEENEY dissented. The dissent would have held that the County Executive's failure to veto Ordinance No. 2017-04 amounted to executive acquiescence that removed the executive's ability to decline to do what the ordinance required. See *Hackel* (FEENEY, J., dissenting), unpub op at 3, citing *The Unconstitutionality of "Signing and Not-Enforcing,"* 16 Wm & Mary Bill Rts J 113, 121-122 (2007). The dissent opined that "even if the charter gives [the County Executive] control over who has access to the software, it necessarily follows that [the County Executive] gave access to the [Commission] when [he] chose not to veto Ordinance 2017-04." *Hackel* (FEENEY, J., dissenting), unpub op

7

at 5. In the dissent's view, the County Executive was bound to follow a lawfully enacted ordinance that had not been vetoed.

The Commission then sought leave to appeal in this Court. We scheduled oral argument on the application, MCR 7.305(H)(1), and directed the parties to brief the following questions:

> (1) whether, pursuant to Macomb County Charter § 8.6.1 and/or defendant's annual appropriations ordinances (see, e.g., Ordinance 2017-04 § 10(H)), plaintiff is required to provide defendant or its agent with access to real-time, read-only access to financial software programs used by the county; and (2) whether the term "law" as used in Charter § 3.5(a) encompasses ordinances validly enacted by the Commission. [*Hackel v Macomb Co Bd of Comm'rs*, 513 Mich ___ (June 21, 2024).]

### III. GOVERNING LEGAL STANDARDS

A trial court's decision to grant or deny declaratory relief or issue a writ of mandamus is reviewed for an abuse of discretion. *Casco Twp v Secretary of State*, 472 Mich 566, 571; 701 NW2d 102 (2005); *US Fidelity & Guaranty Co v Kenosha Investment Co*, 369 Mich 481, 486; 120 NW2d 190 (1963). "A trial court necessarily abuses its discretion when it makes an error of law." *Pirgu v United Servs Auto Ass'n*, 499 Mich 269, 274; 884 NW2d 257 (2016). Underlying questions of law, such as whether a party is obligated to perform a clear legal duty and how to interpret a statute, are subject to de novo review. *Casco Twp*, 472 Mich at 571; *Fraser Twp v Haney*, 509 Mich 18, 23; 983 NW2d 309 (2022). The interpretation of a municipal charter also presents a question of law that we review de novo. *Hackel v Macomb Co Comm*, 298 Mich App 311, 316; 826 NW2d 753 (2012).

Although the parties cited MCR 2.116(C)(8), (C)(9), (C)(10), and (I)(2) to support their motions, the circuit court did not indicate under which of these rules it granted summary disposition. The basis for the circuit court's decisions was primarily confined to considerations of law, but that court's decision was also rendered after extensive discovery, and the court considered whether Ordinance No. 2017-04 violated the county's policy on information technology security. Accordingly, we will presume that the circuit court's January 13, 2022 decision was based on both MCR 2.116(C)(8) and (10).

A motion filed under MCR 2.116(C)(8) tests the legal sufficiency of the complaint. A court must limit its consideration to the pleadings, accept all well-pleaded factual allegations as true, and construe the allegations in the light most favorable to the nonmovant. *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). Such a motion "may be granted only where the claims alleged are so clearly unenforceable as a matter of law that no factual development could possibly justify recovery." *Id*. (quotation marks and citation omitted).

A motion under MCR 2.116(C)(10) tests the factual sufficiency of a complaint, and when evaluating the motion, a trial court may consider "affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Id*. at 120. "Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law." *Id*.

9

## IV. ANALYSIS

The key question before the Court is whether the requirement in Ordinance No. 2017-04, § 10(H) that a designee of the Commission be given real-time, read-only access to the county's financial management software was a valid exercise of the Commission's legislative powers. This requires examination of the Charter, which, pursuant to Const 1963, art 7, § 2 and the Michigan charter counties act, MCL 45.501 *et seq*., serves as Macomb County's constitution.

Municipal charters should be construed in a rational manner, keeping in mind that they are "not always as judiciously framed as they might be." *Sterling Hts v Gen Employees Civil Serv Comm*, 81 Mich App 221, 223; 265 NW2d 88 (1978), citing *Torrent v Common Council of Muskegon*, 47 Mich 115, 118; 10 NW 132 (1881). However, well-known guiding principles of statutory construction apply to county or municipal ordinances, as well as county charters. See *Gora v Ferndale*, 456 Mich 704, 711; 576 NW2d 141 (1998); *Detroit v Walker*, 445 Mich 682, 691; 520 NW2d 135 (1994). The primary goal of interpreting an ordinance or charter is to discover and give effect to the intent of the enacting body. See *Walker*, 445 Mich at 696-697; *American Civil Liberties Union of Mich v Calhoun Co Sheriff's Office*, 509 Mich 1, 8; 983 NW2d 300 (2022).

"[W]e are required to construe [a] charter's language by its commonly accepted meaning as long as it does not produce absurdity, hardship, injustice, or prejudice to the drafters and ratifiers." *Walker*, 445 Mich at 691. As with a statute, the "plain and ordinary meaning" of relevant terms must be understood in light of "the context in which the words are used." *Dep't of Talent & Econ Dev v Great Oaks Country Club, Inc*, 507 Mich 212, 226-227; 968 NW2d 336 (2021) (quotation marks and citation omitted). This Court strives

10

to harmonize and give effect to every word, phrase, and clause, and to avoid an interpretation that renders nugatory or surplusage any part of a statute, ordinance, or charter. See *2 Crooked Creek, LLC v Cass Co Treasurer*, 507 Mich 1, 9; 967 NW2d 577 (2021); *Rott v Rott*, 508 Mich 274, 293; 972 NW2d 789 (2021).

## A. THE HOME RULE CHARTER OF MACOMB COUNTY

"Michigan is a home rule state, in which local governments are vested with general constitutional authority to act on all matters of local concern not forbidden by state law." *Wayne Co v Hathcock*, 471 Mich 445, 460; 684 NW2d 765 (2004) (quotations marks and citations omitted). Macomb County is a charter county, and voters adopted the county's current charter pursuant to Michigan's charter counties act on November 3, 2009.[2] Macomb County voters thus chose a power-sharing arrangement under which the primary powers of governance are divided between the County Executive and the Commission. See *Hackel*, 298 Mich App at 316-318.

---

[2] Macomb County and Wayne County are the only counties that have chosen the "charter county" form of government under the Michigan charter county act, and the electorate of each county chose the elected county executive option over having the county commission appoint a chief administrative officer. Schindler, *County Government Administrative Structure, Administration Today—Part 2*, Michigan State Extension (December 23, 2014), available at <https://www.canr.msu.edu/news/county_government_administrative_structure_administration_today_part_2> (accessed May 12, 2025) [https://perma.cc/K2GK-JF6Y]. According to 2020 census data, approximately 26% of Michigan's residents live in one of these two counties. See United States Census Bureau, *Michigan: 2020 Census* (August 25, 2021) <https://www.census.gov/library/stories/state-by-state/michigan-population-change-between-census-decade.html> (accessed May 12, 2025) [https://perma.cc/C3MN-3SKP].

11

The Charter grants the County Executive broad management, administrative, and enforcement powers:

> The Executive has the authority, duty, and responsibility to:
>
> (a) Supervise, coordinate, direct, and *control* all County departments except for departments headed by Countywide Elected Officials other than the Executive, facilities, operations, and services *except as otherwise provided by this Charter or law*;
>
> (b) *Enforce all laws in the County* except as provided for by this Charter or law;
>
> (c) *Discharge the duties granted the Executive by this Charter, law, or ordinance*, and exercise all incidental powers necessary or convenient for the discharge of the duties and functions specified in this Charter or lawfully delegated to the Executive[.]  [Charter, § 3.5 (emphasis added).]

Similarly, the Charter grants the Commission broad legislative authority:

> In addition to other powers and duties prescribed in this Charter, the Commission may:
>
> (a) *Adopt, amend, or repeal ordinances* or resolutions;
>
> \* \* \*
>
> (j) *Exercise any power granted by law to charter or general law counties unless otherwise provided by this Charter*.  [Charter, § 4.4 (emphasis added).]

And the Commission's enumerated powers are not exclusive:

> The enumeration of powers in this Charter shall not be held or deemed to be exclusive.  In addition to the powers enumerated in this Charter, implied by this Charter, or appropriate to the exercise of the powers enumerated in this Charter, the Commission shall have and may exercise all legislative powers which this Charter could specifically enumerate as provided by the Constitution and the laws of the State of Michigan.  [Charter, § 4.5.]

The Commission must exercise its authority through ordinances or resolutions. Charter, § 4.6 ("The Commission shall act by ordinance if required by this Charter or law, otherwise by resolution. All acts of the Commission imposing a penalty shall be by ordinance."). The Commission's power to act by ordinance is also enshrined in the Michigan Constitution, which provides that, "[s]ubject to law, a county charter may authorize the county through its regularly constituted authority to adopt resolutions and ordinances relating to its concerns."[3] Const 1963, art 7, § 2.

When resolving a previous dispute between the Commission and the County Executive, the Court of Appeals held that Charter, § 4.4(j) grants the Commission all lawful powers granted to charter or general law counties when there is no restriction expressly stated in the Charter. *Hackel*, 298 Mich App at 320-321. Although counties lack the state's police power to regulate for the general welfare, a county board of commissioners may "pass ordinances that relate to county affairs and do not contravene the general laws of this state or interfere with the local affairs of a township, city, or village within the limits of the county . . . ." MCL 46.11(j). The Commission's general legislative authority to act through ordinances as it relates to local matters is firmly established.

As previously discussed, a proposed annual budget prepared by the County Executive must contain specified minimum information and a proposed appropriations

---

[3] Michigan's charter counties act further provides that a county charter must include "[t]he power and authority to adopt, amend, and repeal any ordinance authorized by law or necessary to carry out any power, function, or service authorized by this act and by the charter." MCL 45.514(1)(i).

ordinance, as well as "any information *required* by the *Commission, law, or ordinance*."[4] Charter, § 8.6.1 (emphasis added). The Commission "bears primary responsibility for the final budget." *Macomb Co Prosecutor v Macomb Co Executive*, 341 Mich App 289, 307; 989 NW2d 864 (2022). The Commission reviews the recommended budget, makes any desired changes, and then "adopt[s] a balanced line item operating budget and an appropriations ordinance in accordance with the requirements of law." Charter, § 8.7; see *Macomb Co Prosecutor*, 341 Mich App at 315-316 (holding that the Commission "is permitted to adopt an independent budget under the County Charter").

The parties also do not dispute that, at a minimum, the Charter and the UBAA authorize the Commission to determine *what information must be included in and transmitted with* the proposed budget prepared by the County Executive. See Charter, § 8.6.1; MCL 141.434(5). And there is no doubt that matters concerning a county's budget and financial management relate to local county concerns. But the parties contest whether requiring real-time access to financial management software exceeds the County Executive's obligation to transmit specific information with the proposed budget. Thus, the question in this case is whether Ordinance No. 2017-04, § 10(H), which arguably goes beyond mandating that specific information be included in and transmitted with the proposed budget, was a valid exercise of the Commission's legislative authority.

---

[4] The UBAA also requires the "chief administrative officer" of a county to "furnish to the legislative body *information the legislative body requires* for proper consideration of the recommended budget." MCL 141.434(5) (emphasis added).

14

## B. "LAW" AND "ORDINANCE" IN CONTEXT

As the parties acknowledge, Charter, § 3.5(a) states that the management and supervisory authority held by the County Executive can be limited "as otherwise provided by this Charter or law[.]" If a validly enacted ordinance constitutes a "law" for purposes of Charter, § 3.5(a), then it would be within the Commission's authority to impose at least some conditions on the County Executive's management and supervisory powers through an ordinance. The definitions section in Article I of the Charter does not define the terms "law" or "ordinance." See Charter, § 1.4. Nonetheless, the Charter uses the words "law" and "ordinance," as well as related terms such as "state law" and the phrases "by law" and "by ordinance," in numerous Charter sections, including § 3.5.

The real-time digital access requirement in Ordinance No. 2017-04, § 10(H) affects both the finance and the information technology departments of Macomb County, given the nature of their duties. Those departments are not headed by elected officials and therefore operate under the County Executive's supervision pursuant to Charter, § 3.5(a). The Court of Appeals majority held that the limitation in Charter, § 3.5(a) is confined to actions of the executive that "violate[] the Macomb County Charter or other state law" and therefore did not authorize the Commission to impose limitations on the County Executive's control or management authority absent express authorization by a statute or the state Constitution. *Hackel*, unpub op at 9. The County Executive agrees and argues that the ordinance unlawfully infringes his power of "control" over executive branch departments. On the other hand, the Commission argues that mandating real-time, read-only access to financial management software does not erode the County Executive's control.

15

We disagree with the Court of Appeals. When concluding that the County Executive's supervisory power could not be limited in any way by an ordinance passed by the Commission, the Court of Appeals failed to give the proper meaning to Charter, § 3.5(a). The majority's analysis failed to consider relevant context and principles of statutory interpretation and thus failed to respect the status of county ordinances as binding "law" within the county.

Whether considered in a common or technical sense, the plain and ordinary meaning of "law" is exceptionally broad. *Black's Law Dictionary* (12th ed), for example, defines "law" as, among other things, "[t]he set of rules or principles dealing with a specific area of a legal system," "[t]he judicial and administrative process; legal action and proceedings," and "[a] statute." Similarly, in the abstract, a "statute" can refer to any "law enacted by a legislative body," such as "legislation enacted by . . . a legislature, administrative board, or municipal court," *id*., although in Michigan the term is typically used in reference to legislation enacted by Congress or the state Legislature, see, e.g., *Ter Beek v Wyoming*, 495 Mich 1, 10-11; 846 NW2d 531 (2014); *Blank v Dep't of Corrections*, 462 Mich 103, 108; 611 NW2d 530 (2000) (opinion by MARILYN KELLY, J.). A popular lay dictionary defines "law" as "a binding custom or practice of a community" and "the whole body of such customs, practices, or rules[.]" *Merriam-Webster's Collegiate Dictionary* (11th ed). Although the use of "law" in a specific context or in conjunction

16

with a specific modifier can narrow the scope of the term, the starting point must be a broad and inclusive meaning.[5]

The Commission's argument that a validly enacted local ordinance is a subset of law is well-supported and hardly novel. A relevant lay definition of "ordinance" is "a law set forth by a governmental authority; *specif*: a municipal regulation." *Merriam-Webster's Collegiate Dictionary* (11th ed). And *Black's Law Dictionary* (11th ed) provides a similar but more comprehensive definition:

> An authoritative law or decree; specif., a municipal regulation, esp. one that forbids or restricts an activity. • Municipal governments can pass ordinances on matters that the state government allows to be regulated at the local level. A municipal ordinance carries the state's authority and has the same effect within the municipality's limits as a state statute.

Both are consistent with our own past observation that "[a]n 'ordinance' is simply 'a law set forth by a governmental authority,' specifically 'a municipal regulation.' " *Clam Lake Twp v Dep't of Licensing and Regulatory Affairs*, 500 Mich 362, 381; 902 NW2d 293 (2017), quoting *Merriam-Webster's Collegiate Dictionary* (11th ed). And a leading

---

[5] A majority of this Court recently held that the plain meaning of the phrase "a violation or a suspected violation of a law," when used in Michigan's Whistleblowers' Protection Act, MCL 15.361 *et seq*., includes suspected violations of common law. *Stefanski v Saginaw Co 911 Communications Ctr Auth*, ___ Mich ___, ___; ___ NW3d ___ (April 14, 2025) (Docket No. 166663); slip op at 8, 11, citing MCL 15.362. The Court concluded that there was significance to the context in which the phrase was used as well as the Legislature's choice not to limit the scope of the phrase, such as by referring to "statutory law" or "constitutional law." *Id*. at ___; slip op at 11. Moreover, the broader understanding of the phrase was deemed more consistent with the purpose of the Whistleblowers' Protection Act. *Id*. at ___; slip op at 11. Justice ZAHRA dissented and opined that, when read in context, the text of MCL 15.362 "indicate[d] that the Legislature [was] referring to only positive enactments of law rather than the common law." *Id*. at ___ (ZAHRA, J., dissenting); slip op at 2.

treatise on Michigan municipal law states that "[t]he term 'ordinance,' as used in the law of municipal corporations, designates a local law of a municipal corporation, duly enacted by the proper authorities, prescribing rules of conduct relating to corporate affairs." 18 Michigan Civil Jurisprudence, Municipal Corporations, § 196, p 264.

Although more limited in scope and applicability than a state statute, an ordinance enacted by a county or municipal legislative body represents an analogous form of positive law with binding legal effect within the relevant jurisdiction. If properly enacted and adopted without a veto, a county ordinance becomes the law within the jurisdiction.[6] An ordinance is valid and enforceable if it is consistent with the powers conferred by the state in its Constitution and statutes[7] and if it falls within the scope of authority delegated by the electorate as set forth in the relevant charter. See *Bivens*, 443 Mich at 397. Thus, a validly enacted ordinance is "as much entitled to respectful obedience, and is as much the law of the land for that locality, as a law enacted by the Legislature[.]" *People v Hanrahan*, 75 Mich 611, 620; 42 NW 1124 (1889); see also *People v Goldman*, 221 Mich 646, 649; 192 NW 546 (1923) (recognizing that where the Legislature has allowed local legislation, "violations of such ordinances were violations of the law").[8]

---

[6] And "[i]t is well established in Michigan that ordinances are presumed valid[,] and the burden is on the person challenging the ordinance to rebut the presumption." *Detroit v Qualls*, 434 Mich 340, 364; 454 NW2d 374 (1990).

[7] One form of inconsistency that would render an ordinance invalid would be preemption by a superior law, such as a state statute or constitution. But in this case, the parties agree that no state statutory or constitutional provision preempts Ordinance No. 2017-04, § 10(H).

[8] The United States Supreme Court has also observed the same in the insurance context, holding that "the broad phrase 'fixed by law,' in which the term 'law' is used in a generic

We see no reason to interpret the phrase "by . . . law" in Charter, § 3.5(a) as excluding validly enacted county ordinances given the surrounding context. Unlike in other sections of the Charter, the term "law" as used in Charter, § 3.5(a) is not expressly confined to laws passed by the Michigan Legislature. The drafters of the Charter could have included limiting modifiers or alternative phrases such as "applicable laws," "state law," "state statute," or "laws of this state," but they chose not to do so. This choice appears intentional, considering that numerous other provisions of the Charter include limiting language that, when read in context, confines the term "law" to state laws.[9]

---

sense, as meaning the rules of action or conduct duly prescribed by controlling authority, and having binding legal force," includes "valid municipal ordinances as well as statutes." *US Fidelity & Guaranty Co v Guenther*, 281 US 34, 37; 50 S Ct 165; 74 L Ed 683 (1930).

[9] There are numerous examples in the Charter of provisions that refer to "law" as being narrower than all forms of laws or contrast the term with local ordinances. See, e.g., Charter, § 1.2 (stating that Macomb County "possesses home rule power as granted by Article VII, Section 2 of the Constitution to provide for any matter of County concern together with all other powers which a county may possess *under the Constitution and laws of this state*") (emphasis added); Charter, § 1.4 (defining "agency" as "a department, office, board, commission, or other administrative unit of County government, *whether created by Charter, ordinance, or law*") (emphasis added); Charter, § 2.5.1 (stating that "the Ethics Board shall propose rules of procedure for the enforcement of *the ethics provisions of this Charter, ordinance, and law*") (emphasis added); Charter, § 2.6.1 (stating that ethics complaints "shall be kept confidential except *as required by law or ordinance*") (emphasis added); Charter, § 3.2 (stating that "[s]*tate law procedures* and deadlines" apply to both elected countywide officials and the County Executive) (emphasis added); Charter, § 4.5 (stating that "the Commission shall have and may exercise all legislative powers which this Charter could specifically enumerate *as provided by the Constitution and the laws of the State of Michigan*") (emphasis added); Charter, § 6.6.4 (stating that offices and departments created under Article 6 of the Charter would continue to exist once the Charter was adopted but "shall be subject to" "the Michigan Constitution and *state law*") (emphasis added); Charter, § 8.10 (stating that purchasing policies adopted by the Commission "shall be consistent with *federal and state law, the Charter, and ordinances*, resolutions, and policies of the Commission") (emphasis added); Charter, § 11.5.1 (stating that "[a]ll

19

As a notable example, Charter, § 3.5(c) expressly contrasts "ordinance" and "law" by saying that the County Executive must "[d]ischarge all duties granted [to] the Executive by this *Charter, law, or ordinance . . . .*" (Emphasis added.) This provision implies that the Commission can impose legal duties on the County Executive through a validly enacted ordinance, in addition to duties that are imposed by the Charter or some other form of law. But Charter, § 3.5(a) uses only the broader phrase "by this Charter or law," without carving out ordinances as distinct from "law." Therefore, we conclude that the most rational way to harmonize the use of "law" within Charter, § 3.5, and within Article III as a whole, is to read the term as including validly enacted county ordinances unless surrounding context or a textual modifier clearly provides for a narrower meaning.[10]

---

applicable requirements of the *Michigan Constitution and state law* shall continue to govern the Road Commission of Macomb County") (emphasis added).

[10] We note that courts in other jurisdictions have reached similar conclusions. For example, in Minnesota, it is "well-established that ordinances are a subset of laws; the two are not co-extensive, but the former is included in the latter." *Motokazie! Inc v Rice Co*, 824 NW2d 341, 346 (Minn App, 2012). That court concluded that, because the Minnesota Legislature assumes the common usage of words, and because "[a]n ordinance is a local law," the words " 'as required by law' include[] requirements in ordinances . . . ." *Id*. (quotation marks and citation omitted). Similarly, in Ohio, "[w]here a city charter speaks of a law, it is inconceivable to conclude that such term does not include ordinances, for the reason that the legislative body set up by a city charter can only enact ordinances or resolutions and not statutes." *State ex rel Leach v Redick*, 168 Ohio St 543, 550; 157 NE2d 106 (1959). Other jurisdictions have reached similar conclusions. See *Maynard v Layne*, 140 W Va 819, 825; 86 SE2d 733 (1955) (stating that an ordinance is "a local law of the municipality, emanating from its legislative authority, and operative within its restricted sphere as effectively as a general law of the sovereignty"); *Taylor v City of Carondelet*, 22 Mo 105, 112 (1855) ("The law-making power, in fact, made the board of trustees a miniature general [a]ssembly, and gave their ordinances, on this subject, the force of laws passed by the legislature of the state."); *Kersey v Terre Haute*, 161 Ind 471, 476; 68 NE 1027 (1903) (stating that "the word 'ordinance' means 'a local law, prescribing a general and permanent

We emphasize, however, that our interpretation of Charter, § 3.5 should not be thoughtlessly applied to all other sections in all other articles of the Charter, and nothing in this opinion allows an ordinance to directly conflict with or override an unambiguous provision of the Charter or state law. Again, we note the longstanding general observation that municipal charters are "not always as judiciously framed as they might be." *Gen Employees Civil Serv Comm*, 81 Mich App at 223. Macomb County's Charter is no exception. The Charter uses the unmodified form of "law" inconsistently. Accordingly, each usage of "law" should be read in context with the goal of achieving rational internal harmony within the relevant section and article of the Charter that is under consideration.

## V. APPLICATION

Ordinance 2017-04, § 10(H) was validly adopted as a law within Macomb County. The ordinance imposes a degree of restriction upon the County Executive's control over the county's information technology and finance departments. But Charter, § 3.5(a) permits such restriction if it is accomplished by the "Charter or law" and does not create a conflict between the ordinance and the Charter. Nothing in Charter, § 3.5 clearly indicates that "law" was intended to be so narrow as to exclude validly enacted ordinances. It follows, therefore, that after its adoption Ordinance No. 2017-04, § 10(H) was effective and enforceable absent a clear conflict with a Charter provision other than § 3.5(a) or a superior form of law. Although the parties disagree about the meaning of Charter, § 3.5(a), neither party suggests that the ordinance is otherwise in conflict with or preempted by

---

rule' "), quoting *Citizens' Natural Gas & Mining Co v Elwood*, 114 Ind 332; 16 NE 624 (1888).

another Charter provision or a state law. Section 3.5(b) of the Charter further implies that the County Executive has some form of a legal duty to enforce Ordinance 2017-04, § 10(H), irrespective of whether the ordinance requires more of the County Executive than the UBAA or Charter, § 8.6.1. Therefore, we hold that the plain language of Ordinance 2017-04, § 10(H) requires the County Executive to provide the Commission or its agent with access to real-time, read-only access to financial software programs used by the county. This conclusion makes it unnecessary to address whether Charter, § 8.6.1 separately imposes such a requirement.

## VI. CONCLUSION

For the reasons previously discussed, the judgment of the Court of Appeals is reversed, and this case is remanded to the circuit court for further proceedings that are consistent with this opinion. We take no position as to whether there are other issues that may need to be resolved on remand. We do not retain jurisdiction.

> Elizabeth M. Welch
> Megan K. Cavanagh
> Brian K. Zahra
> Richard H. Bernstein
> Kyra H. Bolden
> Kimberly A. Thomas

HOOD, J., did not participate because the Court considered this case before he assumed office.